Edward David James III
Pro Se Plaintiff
Inmate #154390
Potter County Detention Center
13100 NE 29th Ave
Amarillo, TX 79111



NOV 24 2025 PM4:01
FILED - USDC - NDTX - AM

---

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF TEXAS
## AMARILLO DIVISION

EDWARD DAVID JAMES III,

               Plaintiff,

v.

SARAH E. CLARK, individually and in her
capacity as an employee and agent of
Gray Television, Inc.;
GRAY TELEVISION, INC.;
JOHN DOES 1–10,

               Defendants.

**2-25 CV-253-Z**

Civil Action No. _____

---

## VERIFIED COMPLAINT FOR DEFAMATION, DEFAMATION BY IMPLICATION, INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, AND REQUEST FOR DAMAGES

Plaintiff Edward David James III, appearing pro se, respectfully alleges as follows:

### I. JURISDICTION AND VENUE

1. This Court has jurisdiction under 28 U.S.C. § 1332 because the amount in controversy

   exceeds $75,000 and the parties are citizens of different states.

2. Venue is proper in this District under 28 U.S.C. § 1391(b) because the events giving rise to these claims occurred in Amarillo, Texas, and the defamatory broadcast and publication were distributed here.

## II. PARTIES

1. Plaintiff, Edward David James III, is a citizen of New Jersey, currently detained in Potter County, Texas.

2. Defendant, Gray Television, Inc., is a national media corporation operating and controlling KFDA-TV ("NewsChannel 10") in Amarillo, Texas, and may be served through its registered agent at: Gray Television, Inc., c/o CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, TX 75201

3. Defendant, Sarah E. Clark, is a resident of Texas and, at all relevant times, was acting individually and within the course and scope of her employment as an employee and agent of Gray Television, Inc. She may be served at her workplace, which is: KFDA–NewsChannel 10, 7900 Broadway Drive, Amarillo, TX 79108.

4. Defendants John Does 1–10 are editors, newsroom directors, producers, and supervisory personnel responsible for the publication, review, approval, and distribution of the defamatory content at issue. Upon information and belief, each John Doe Defendant was employed by Gray Television, Inc. and working at KFDA–NewsChannel 10, whose address is: KFDA–NewsChannel 10, 7900 Broadway Drive, Amarillo, TX 79108.

Their true names and exact roles will be added by amendment when identified through discovery.

## III. FACTUAL BACKGROUND

**A. The Defamatory Article and Broadcast**

1.  In November 2025, Defendants published and broadcast a news report entitled "Man Who Refused to Serve Prison Sentence Extradited from New Jersey." The headline, broadcast narration, and captions, as well as the structure and imagery of the article, state or strongly imply that Plaintiff refused to serve his prison sentence, fled Texas, was "caught outside of Texas," and evaded numerous law enforcement attempts to serve an arrest warrant.

2.  These assertions are false, defamatory per se, and were made with actual malice or reckless disregard for the truth. The article and broadcast were widely disseminated, including on the station's website and social media, and dominate search engine results for Plaintiff's name, ensuring maximum reputational harm.

**B. The Truth About Plaintiff's Conduct**

1.  Plaintiff did not refuse to serve his sentence. Under Texas Rule of Appellate Procedure 18.1, the clerk of the appellate court must issue a mandate in accordance with the judgment and deliver it to the trial court and all parties once certain deadlines expire. Until the mandate is issued, the upholding of the conviction is still pending and the trial court retains no authority to enforce the sentence. Furthermore, the trial court cannot lawfully resume jurisdiction to enforce a sentence until the mandate has issued. Accordingly, any representation that Mr. James was required to return and begin serving his sentence on February 1, 2025 is legally untenable: the appellate mandate did not issue until July 2025. Defendants failed to investigate, understand, or report this critical legal

context—and then refused to correct their false narrative when the errors were specifically pointed out to them.

2. Plaintiff continued to file appellate pleadings, including a Petition for Discretionary Review in March 2025, demonstrating he was not evading the courts but actively pursuing legal remedies.

3. Plaintiff voluntarily surrendered in July 2025, after the mandate issued, through arrangements made by his New Jersey attorney and local law enforcement. He was not apprehended or "caught" as Defendants claimed.

4. The administrative bond-surrender warrant issued on February 3, 2025, was procedural, never acted upon, never entered into NCIC, never sent for extradition, and never served. No law enforcement agency ever attempted service, and Plaintiff resided openly at his authorized address, participating in church, led sobriety programs, and was in regular contact with local law enforcement.

## C. Fabrication and Sensationalism

1. Defendants fabricated the claim that Plaintiff "avoided many attempts by law enforcement to serve the arrest warrant." In reality, no such attempts were made; Plaintiff lived openly and lawfully at his authorized address, and any effort to locate him would have succeeded immediately.

2. Defendants have produced no evidence of the alleged "many attempts" by law enforcement to serve a warrant, because none exists; having made this assertion,

Defendants bear the burden of substantiating it, and their inability to do so further confirms the statement was fabricated and published with reckless disregard for the truth.

3. Defendants sensationalized the story through their use of inflammatory headlines, repeated display of Plaintiff's mugshot, and language designed to provoke public outrage and presumption of guilt. The article and broadcast were structured to maximize reputational harm, leading with the most damaging and salacious claims and relegating any mitigating information to the margins.

4. Defendants further inflamed public perception by emphasizing details such as Plaintiff's relationship with "an older married woman", "his 7th-grade teacher" and referencing his past struggles with alcohol as current, presenting these facts in a manner calculated to scandalize and mislead, rather than to inform.

**D. Cherry-Picking and Twisting Website Content**

1. Defendants relied heavily on Plaintiff's website for their reporting but cherry-picked and distorted its content to support a negative and misleading narrative. The website presents a comprehensive account of Plaintiff's history, including his PTSD stemming from an 18-year-old conviction for a consensual relationship, the judicial exemption associated with that prior case, his documented rehabilitation and five years of sobriety, his nonprofit and recovery-teaching work, and the flawed investigative process underlying his current conviction—a process now under review in his pending habeas corpus petition. Rather than acknowledge this context, Defendants selectively extracted isolated lines and mischaracterized them to create the false impression of a man with a pattern of instability, deception, or ongoing misconduct. By omitting Plaintiff's traumatic history,

judicial exemption, recovery, and the documented investigative failures at issue in the habeas proceeding. Defendants knowingly distorted the website's meaning and published a misleading and defamatory portrayal of Plaintiff's character and legal history.

2.  Defendants highlighted Plaintiff's past struggles with alcohol by quoting selectively from website entries, while deliberately omitting the central and current fact that Plaintiff has been sober for five years, leads sobriety classes, and was approved for bond post-conviction based on exemplary conduct. This omission is especially egregious given that Plaintiff's sobriety and recovery work are a primary focus of the website and central to his public identity.

3.  Similarly, Defendants misrepresented Plaintiff's personal life by focusing on the "7th-grade teacher" "older married woman" detail, while omitting that the relationship began between consenting adults and that Plaintiff and his wife have been married for nearly four years. These facts were clearly stated on the website and in subsequent corrections provided to Defendants. These editorial choices were made despite Defendants' access to the full and accurate context.

**E. Pattern and Practice of Sensationalism**

1.  Defendants, and particularly Defendant Clark, have established a pattern of leading with mugshots and salacious headlines in crime and courts coverage, rarely if ever reporting on individuals wronged by the justice system. This editorial approach encourages public presumption of guilt and maximizes reputational harm to those featured, including Plaintiff.

2. Defendants, including Gray Television, Inc. and its editorial staff, have established a pattern and practice of leading their nightly news broadcasts with mugshots and salacious headlines about individuals accused of crimes. This editorial approach is not limited to Defendant Clark, but is a station-wide policy that encourages public presumption of guilt, maximizes reputational harm, and disregards the presumption of innocence. The harm to Plaintiff is the foreseeable and intended result of this systemic practice.

## F. Knowledge of Falsity and Refusal to Correct

1. On November 10, 11, and 12, 2025, Plaintiff's website team and spouse both provided Defendants with formal written notice detailing the factual inaccuracies and requesting correction. Defendants refused to correct or update their reporting, leaving the defamatory statements published and further amplifying the harm. This post-publication notice is direct evidence of actual malice, reckless disregard, or purposeful avoidance of the truth.

2. Defendants' reckless disregard for the truth is underscored by reporter Sarah Clark's own professional background, which sharply contradicts her self-representation as an expert in crime and courts reporting. According to her published biography, Clark describes herself as an "investigative producer for NewsChannel 10's crime and courts coverage" with a passion for "ethical investigative journalism—particularly within the Texas courts." However, her publicly available résumé and LinkedIn profile reveal that she joined NewsChannel 10 only three months before publishing the article and has no prior experience in crime reporting, courts reporting, investigative journalism, or legal procedure. For nearly a decade prior, Clark worked almost exclusively in marketing, digial content creation, brand strategy, social media management, and client-operations

strategy—not legal journalism. Despite this limited background, Defendants assigned her a legally complex story involving appellate mandates, extradition procedure, habeas corpus requirements, and criminal procedural timelines. Clark then misreported these concepts, failed to request comment despite the website listing its contact email, relied on a defective appellate brief challenged as ineffective in Plaintiff's pending habeas petition, and ignored the habeas outline posted prominently on Plaintiff's website—the same website from which she selectively quoted. The extreme mismatch between Clark's advertised expertise and her actual qualifications, combined with Defendants' decision to assign her this legally complex story and permit publication despite her omissions, distortions, and invented implications, constitutes negligent hiring, negligent supervision, an institutional indifference to accuracy, and clear evidence of actual malice or reckless disregard for the truth.

### G. Respect for the Court, Risk of Judicial Prejudice, and Need for Immediate Relief

1. Plaintiff has at all times demonstrated respect for the authority and fairness of the presiding judge, complying fully with all lawful orders and surrendering voluntarily to the court as soon as the appellate mandate issued. This conduct reflects Plaintiff's appreciation for the court's fairness and his commitment to lawful process. Contrary to Defendants' false implication that Plaintiff defied or disrespected the court, Plaintiff's actions were in strict accordance with Texas law and established procedure.

2. The defamatory article and broadcast, however, were published and aired at a critical juncture—on November 8-9, immediately after Plaintiff's habeas corpus petition was docketed with the Potter County court on October 30, 2025, and during the 35-day period

in which the local presiding judge is required to review the petition. By falsely stating that Plaintiff "refused to serve his sentence," "evaded law enforcement," and defied the court's order, Defendants not only misrepresented Plaintiff's conduct but also unfairly cast the judge's decision to grant bond in a negative light. In a close-knit legal community, such public mischaracterization risks causing embarrassment to the court and could create or exacerbate bias against Plaintiff, particularly as his habeas petition remains pending before the same judge.

3. The ongoing availability and promotion of the article and broadcast during this sensitive period heighten the risk of irreparable harm, threatening both Plaintiff's right to a fair and impartial judicial review and the integrity of the judicial process itself. Immediate injunctive relief is necessary to prevent further prejudice and to protect the fundamental fairness of the proceedings.

### H. Ongoing Publication and Widespread Dissemination

1. The defamatory article was first published on November 8, 2025, and the television broadcast aired at least once on November 9, 2025. Despite being notified of the article's inaccuracies and the harm caused on November 10, 11, and 12, Defendants have continued to publish and promote the article on their website and across all of their social media platforms. As of the filing of this complaint, the article remains publicly accessible and continues to be the number one search engine result for Plaintiff's name.

2. The continued online presence and repeated dissemination of the defamatory content have ensured that the harm to Plaintiff's reputation, emotional well-being, and professional opportunities is ongoing and severe. The persistent availability of the article

and broadcast, despite formal requests for correction, further evidences Defendants' actual malice and reckless disregard for the truth.

## I. Social Media Backlash and Foreseeable Harm

1. Following publication, Defendants promoted the article on their official social media platforms, including the KDFA Facebook page. The public response was immediate and overwhelmingly hostile, with numerous comments repeating and amplifying the defamatory implications created by Defendants' reporting. Readers described Plaintiff as a drunk, called him "disgusting" for "sleeping with his teacher," and questioned, "why do we keep letting violent felons out on bond?" These comments, while not authored by Defendants, are a direct and foreseeable result of the article's structure, omissions, and sensational framing. The social media backlash demonstrates that the public understood and internalized the false and damaging impressions Defendants intended to convey, resulting in severe reputational and emotional harm to Plaintiff. The persistence and virulence of these comments further underscore the ongoing nature of the injury and the need for both compensatory and punitive relief.

2. After the broadcast aired, Mr. James witnessed Potter County Detention Center staff remotely remove NewsChannel 10 from the jail televisions. While he and other inmates were watching, the screen displayed a remote override, the channel was forcibly changed, and NewsChannel 10 became unavailable facility-wide. Jails do not selectively block a single local station unless the content is causing disruption or safety concerns. This immediate institutional reaction shows how inflammatory the broadcast was and how directly it affected Mr. James's safety, emotional well-being, and daily environment while in custody.

## IV. CAUSES OF ACTION

### COUNT 1 — DEFAMATION PER SE

1. Defendants published and broadcast statements accusing Plaintiff of criminal conduct—refusal to serve a sentence after court upheld conviction, evading police—constituting defamation per se under Texas and federal law. These statements were false, published to a broad audience, and have caused Plaintiff severe reputational harm, mental anguish, and ongoing damage, including increased danger and suffering in custody due to the publicity.

2. Defendants also published the demonstrably false statement that "one year later, the court of appeals upheld his guilty conviction" and that Plaintiff "was told to return to Texas by Feb. 1 to begin serving his sentence." Both assertions are categorically untrue. Under Texas law, a conviction is not "upheld" until the appellate mandate issues, which did not occur in Plaintiff's case until July 2025—five months after the date Defendants identified. Plaintiff remained at his approved address until the mandate, and no Texas court ordered him to "begin serving his sentence" in February. The February 3 docket entries Defendants relied upon—an administrative bond-surrender notation—did not finalize his conviction, was never acted upon by law enforcement, and did not require Plaintiff to start serving a sentence. By collapsing the February administrative entry with the July appellate mandate, Defendants created a wholly false narrative that Plaintiff defied a lawful order to commence punishment, thereby reinforcing their defamatory theme that he "refused to serve his sentence" and was a fugitive. This is not a matter of interpretation or opinion: it is a verifiable false statement that can be disproven by the public court record. Defendants' failure to verify even the most basic procedural facts

written by a journalist specializing in the Texas criminal court system further demonstrates reckless disregard for the truth.

## COUNT 2 — DEFAMATION BY IMPLICATION

1. Defendants repeatedly used terms such as "fugitive," "caught outside of Texas," "refused to serve his sentence after the court upheld his conviction", and "evaded law enforcement" to describe Plaintiff's status after the bond surrender. While the term "fugitive" may appear in legal documents as a technical designation when a bond is surrendered and the individual is out of state, in Plaintiff's case this was purely procedural. Plaintiff was not hiding, absconding, or evading law enforcement; he remained at his approved address, was in regular contact with local authorities, and continued to participate in the appeal process and community activities. Defendants' reporting deliberately conflated this technical legal term with its ordinary, pejorative meaning, thereby creating the false and damaging impression that Plaintiff was actively fleeing justice. This mischaracterization is both false and defamatory by implication.

2. Even where certain isolated phrases appear neutral, the article's structure, framing, headline, and selective omissions were designed to create the false impression that Plaintiff fled justice, was hiding, and was apprehended as a fugitive. For the headline, Plaintiff's mugshot was superimposed over a map of the United States with an arrow from New Jersey to Texas, with the headline *Amarillo man who refused to serve prison sentence extradited from New Jersey.* Directly under that, the mugshot is captioned with *Edward David James III refused to serve his prison sentence.*

At the end of the article, Defendants repeated the same mugshot with another defamatory caption: *".James, 40, refused to serve his prison sentence after a court of appeals upheld his conviction."* By bookending the story with the same inflammatory image and identical false accusation, Defendants deliberately reinforced the false narrative that Plaintiff defied lawful authority and had to be hunted down and returned to Texas. This sandwiching of the mugshot between repeated false statements was intentional, sensationalistic, and designed to leave readers with a defamatory and misleading impression.

3. Defendants further reinforced this defamatory implication by omitting critical facts about Plaintiff's five years of sobriety and his role as a recovery counselor—facts that are central to his public identity and are prominently featured on his website. Defendants intentionally or recklessly misled readers to believe that Plaintiff's current legal troubles were linked to ongoing substance abuse. Reporter Sara Clark wrote "[Plaintiff] confesses to heavy drinking throughout his time on bond in New Jersey," then supports that claim with a single quote lifted from the website describing conduct in 2020, before Plaintiff entered long-term sobriety. Defendants knew or recklessly disregarded that the quoted passage referred to events in 2020 before Plaintiff got sober in 2021, began teaching recovery classes, has remained sober for five years, and founded a nonprofit dedicated to rehabilitation. Instead of acknowledging the prominently displayed sobriety information on Plaintiff's website—the very source they relied upon—Defendants ignored it, omitted it, and repositioned the 2020 quote into the 2024–2025 timeline to create the false impression that Plaintiff was currently abusing alcohol while on appeal bond.

4.  This manipulation of chronology transformed past struggles into present misconduct and portrayed a sober recovery counselor as an actively impaired fugitive, harming his reputation within the recovery community and jeopardizing his nonprofit's credibility and grant prospects. Defendants' selective use of the website while deliberately bypassing central, plainly accessible truths evidences purposeful avoidance of accuracy and demonstrates actual malice. Their state of mind is further confirmed by their refusal to retract or correct the story after receiving three detailed written notices—one from Plaintiff's supporters and two formal notices from his wife—each providing documentation disproving the article's false implications. Instead of correcting the record, Defendants defended their narrative and continued publishing statements they knew to be misleading. This conscious decision to maintain a defamatory story after direct notice of its falsity constitutes reckless disregard for the truth and satisfies the standard for actual malice.

5.  Defendants further distorted Plaintiff's words by transforming a neutral procedural explanation on his website into a false narrative of manipulation and delay. The website states: "He turned himself in to our county jail to fight extradition and begin the Habeas Corpus process, which can only work if one is in custody." This sentence merely describes a well-established legal requirement of Texas post-conviction procedure: a defendant on appeal bond is not considered "in custody" for purposes of a writ under Article 11.07, and physical confinement is required before the trial court can obtain jurisdiction. Defendants rewrote this neutral explanation into the defamatory assertion that Plaintiff surrendered "only because he discovered that the 'wrongful conviction' process in Texas can only happen when the person is in custody." The word "discovered"

— and the defamatory implication that Plaintiff belatedly learned this fact, delayed compliance, or acted manipulatively— appears nowhere on Plaintiff's website, in any public record, or in any statement by Plaintiff.

6.  By inventing a motive and attributing to Plaintiff a fabricated mental state, Defendants stripped away the context of voluntary surrender, disregarded the dispositive fact that custody became legally required only after the appellate mandate issued in July 2025, and recast his immediate compliance with that mandate as opportunistic gamesmanship by a supposed fugitive. Courts consistently hold that fabricating a speaker's motive or state of mind constitutes compelling evidence of actual malice. Defendants' insertion of the word "discovered," combined with their distortion of the mandate timeline, is a textbook example of defamation by implication and reckless disregard for the truth.

7.  Moreover, Defendants failed to explain that, under Texas law, a criminal sentence is not enforceable until the appellate court issues its mandate. The average reader is not familiar with appellate procedure or the legal significance of a mandate and would therefore be especially vulnerable to the false impression that Plaintiff was defying a lawful order or evading justice, when in fact he was acting in compliance with the law and court procedure. Defendants intended, or at a minimum reasonably should have foreseen, that these editorial choices would create a false and damaging impression of Plaintiff's character and conduct—an outcome that is actionable under Texas law.

8.  Additionally, Defendants quoted the assault allegations in detail and relied exclusively on the State's appeal brief, while omitting any reference to Plaintiff's defense, the flaws in the investigation, or the substantial arguments and evidence presented on Plaintiff's

website. This selective presentation of only the prosecution's narrative, to the exclusion of exculpatory or mitigating information, further demonstrates Defendants' bias and intent to create a false and damaging impression of Plaintiff's character and conduct—an outcome that is actionable under Texas law.

9. Defendants' reckless disregard for the truth is shown by the direct conflict between Sarah Clark's assertions and the very website she relied upon. Clark wrote: "James himself acknowledges a faint memory of receiving the messages", but the website passage she ignored states the opposite. Plaintiff wrote: "I didn't recognize some of the messages, and the dates didn't match. Parts about Geoff that she told me often were missing. Something didn't add up." By claiming Plaintiff "acknowledged" the messages while disregarding this clear statement disputing their authenticity, Defendants inverted the meaning of the quoted source and presented contested, late-disclosed evidence as admitted fact. This selective omission and mischaracterization is a textbook example of defamation by implication and demonstrates reckless disregard for the truth.

10. The only reference Defendants make to Plaintiff's website and his efforts to present his defense is to state that the website "contains excerpts of the trial transcript…with added notes that attempt to discredit his attorney, law enforcement, and the victim." This dismissive and biased characterization ignores the website's primary purpose: to document trial errors, present exculpatory evidence, and challenge the fairness of the conviction. By framing Plaintiff's efforts as merely an attempt to "discredit" others, Defendants furthered the false and damaging impression that Plaintiff's claims are baseless, rather than legitimate and supported by evidence.

11. Defendants also mischaracterized statements made by Plaintiff's website team regarding his inability to purchase a plane ticket and his PTSD episode, presenting these as evidence of criminal intent or evasion rather than as the result of a documented mental health crisis. Plaintiff's website prominently details his long-standing PTSD stemming from his prior incarceration as a nineteen-year-old, and explains how the loss of his first appeal triggered a severe episode that temporarily impaired his ability to travel. Defendants ignored this context—Plaintiff was still actively appealing through the proper legal channels—and instead repurposed these statements to suggest manipulation or flight.

12. Defendants further portrayed Plaintiff's lawful decision to surrender locally in New Jersey and to challenge extradition pending his habeas petition as evidence of wrongdoing, when in fact these were legitimate exercises of his legal rights. By framing these lawful, reasonable, and procedurally authorized actions as criminal or evasive, Defendants manufactured a false narrative of intentional flight and deceit, despite having access to the very information that disproved it. This compounded the false and defamatory impression conveyed to the public.

## COUNT 3 — NEGLIGENCE AND GROSS NEGLIGENCE

1. Defendants failed to conduct basic fact-checking, disregarded publicly available court records, ignored the appellate-mandate process, and omitted critical context readily available to them. Their reporting fell below professional standards and constituted gross negligence and reckless disregard for the truth.

## COUNT 4 — INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

1. Defendants' conduct was extreme and outrageous, exceeding all possible bounds of decency and utterly intolerable in a civilized community. Defendants fabricated law-enforcement efforts, falsely implied Plaintiff was a fleeing fugitive, sensationalized and mocked deeply personal aspects of his life, distorted statements relating to his PTSD and mental-health crisis, omitted exculpatory facts they had in their possession, repurposed a neutral procedural explanation into a false narrative of manipulation, and refused to correct the record after repeated notice of falsity.

2. Such conduct was intentional or, at minimum, carried out with reckless disregard for the likelihood that it would cause severe emotional harm. Defendants knew or should have known that misrepresenting Plaintiff as a dangerous fugitive, alcoholic, and manipulative criminal—while ignoring his documented PTSD, voluntary surrender, years of sobriety, and ongoing post-conviction review—would inflict profound emotional suffering and reputational devastation.

3. As a direct and proximate result of Defendants' extreme and outrageous conduct, Plaintiff has suffered severe emotional distress, including humiliation, anxiety, fear, shame, loss of dignity, sleeplessness, mental anguish, and significant disruption of daily functioning. Defendants' conduct also caused profound impairment of Plaintiff's professional and personal opportunities, including damage to his reputation as a sobriety counselor, nonprofit founder, and community leader.

4. Defendants' repeated decision to publish, amplify, and maintain these false implications—despite being notified of their falsity and provided with corrective

documentation—further demonstrates the reckless disregard and conscious indifference required for liability under Texas law and the Restatement (Second) of Torts § 46, which Texas courts expressly follow.

## COUNT 5 — PUNITIVE DAMAGES

1. Defendants acted with actual malice by inventing "many attempts" to serve a warrant, falsely portraying Plaintiff as refusing to serve a sentence, refusing correction after notice, using sensational framing to inflame readers, and by selectively omitting readily available exculpatory facts while presenting knowingly false implications as truth. Punitive damages are warranted to punish and deter such conduct.

## V. DAMAGES

1. Plaintiff seeks $15,000,000 in damages, consisting of:

    a. Reputational harm;
    b. Mental anguish;
    c. Increased danger and suffering in custody due to publicity;
    d. Loss of professional and personal opportunities;
    e. Loss of nonprofit credibility, community trust, and grant-funding eligibility;
    f. Punitive damages for actual malice;
    g. Attorney's fees if counsel appears.

## VI. REQUEST FOR RELIEF

1. Plaintiff respectfully requests that this Court enter judgment awarding:

    a. $15,000,000 in compensatory and punitive damages;

b. Costs of suit;

c. Any further relief the Court deems just and proper.

## VII. JURY DEMAND

1. Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted

November 23 , 2025

Edward David James III. Pro Se Plaintiff
Inmate #154390
Potter County Detention Center
Amarillo, Texas 79111

## VERIFICATION

I, Edward Davis James III, declare under penalty of perjury under the laws of the United States of America that I am the plaintiff in the foregoing Verified Complaint. The facts stated therein are true and correct to the best of my knowledge, information, and belief.

Dated on _November 23,_ , 2025.

Signed: _Ed James_

Edward Davis James III

Plaintiff, Pro Se

JS 44  (Rev. 04/21) (TXND 4/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

EDWARD DAVID JAMES III

**(b)** County of Residence of First Listed Plaintiff   OCEAN COUNTY, NJ
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

## DEFENDANTS

SARAH E. CLARK, individually and in her capacity as an employee and agent of

County of Residence of First Listed Defendant   POTTER COUNTY, TX
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☐ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 U.S. Government Defendant | ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | **INTELLECTUAL** | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment ☒ | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 880 Defend Trade Secrets | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | Act of 2016 | (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | | ☐ 485 Telephone Consumer |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | **SOCIAL SECURITY** | Protection Act |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| | Medical Malpractice | | Leave Act | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 870 Taxes (U.S. Plaintiff | Act |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | or Defendant) | ☐ 896 Arbitration |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party | ☐ 899 Administrative Procedure |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | 26 USC 7609 | Act/Review or Appeal of |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | Agency Decision |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | ☐ 950 Constitutionality of |
| | Other | ☐ 550 Civil Rights | Actions | | State Statutes |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332
Brief description of cause:
Defamation, defamation by implication, and intentional infliction of emotional distress under Texas law.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
15,000,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 11/21/2025 | /s/ Edward David James III, pro se plaintiff |

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____