Edward David James III
Pro Se Plaintiff
Inmate #154390
Potter County Detention Center
13100 NE 29th Ave
Amarillo, TX 79111

JAN 16 2026 AM8:48
FILED - USDC - NDTX - AM

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

EDWARD DAVID JAMES III,
           Plaintiff,

v.                                           CASE NO. 2:25-CV-00253-Z

SARAH E. CLARK, individually and in her
capacity as an employee and agent of
Gray Television, Inc.;
GRAY TELEVISION, INC.;
JOHN DOES 1–10,
           Defendants.

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

**I. INTRODUCTION**

Defendants ask this Court to dismiss a defamation action by accepting as true a narrative that is contradicted by the pleadings, the judicial record available at the time of publication, and Defendants' own post-publication conduct. At the Rule 12 stage, that request must be denied.

Plaintiff does not challenge Defendants' right to report on court proceedings. He challenges Defendants' publication of specific, verifiable false statements portraying him as someone who refused to serve a sentence, evaded law enforcement, avoided "many attempts" at service,

1

remained a fugitive for months, was "caught" outside of Texas, and surrendered only after a belated "discovery" of custody requirements—assertions unsupported by any record and contradicted by Defendants' own source.

Plaintiff has plausibly alleged falsity, fault, and actual malice.

## II. LIMITED-PURPOSE PUBLIC FIGURE STATUS IS ISSUE-SPECIFIC AND DOES NOT BAR PLAINTIFF'S CLAIMS

Even if Plaintiff is deemed a limited-purpose public figure with respect to advocacy concerning his conviction and appellate proceedings, that status is issue-specific and does not extend to collateral subjects Defendants chose to publish.

A plaintiff's status may differ by subject matter within the same publication, such that he may be a limited-purpose public figure as to one issue and a private individual as to others unrelated to the asserted public controversy.

The alleged public controversy concerns the legality of Plaintiff's conviction and post-conviction process. Plaintiff did not inject himself into any public debate regarding substance abuse, sobriety, motive for surrender, or character. Statements implying ongoing alcohol abuse, fabricated motive, evasion of service, or refusal to serve a sentence fall outside the scope of the controversy Plaintiff allegedly entered.

In any event, as set forth below, Plaintiff has plausibly alleged actual malice. Defendants' public-figure argument therefore does not warrant dismissal.

## III. JUDICIAL NOTICE AND FAIR REPORT PRIVILEGE DO NOT WARRANT DISMISSAL

A. Fair Report Does Not Protect Embellishment Beyond the Record

The fair report privilege protects accurate reporting of what official records state; it does not shield embellishment, inference, or fabrication. Plaintiff does not dispute Defendants' ability to report the existence of court proceedings, warrants, or custody status. Plaintiff challenges statements not contained in any official record, including that he "refused to serve his prison sentence," "avoided many attempts" by law enforcement, or surrendered "only because he "discovered" a custody requirement.

As alleged in the Complaint, Plaintiff voluntarily surrendered prior to issuance of any post-mandate capias, no attempts were made to serve the February 3 administrative bond warrant, and Defendants were placed on written notice of these facts and declined to correct the article. (Compl. ¶¶B, C; Ex. F).

B. Defendants' Exhibits Post-Date Publication and Cannot Retroactively Justify the Article

The dockets of indictments Defendants attach arose **after** publication of the November 8, 2025 article and November 9, 2025 evening newscast and therefore cannot retroactively justify Defendants' statements at the time they were made.

Moreover, the indictments Defendants rely upon reflect service of paperwork on November 14 and 26, 2025, while Plaintiff was already incarcerated. Service on an incarcerated individual does not establish evasion, avoidance, or "many attempts" to serve a warrant.

3

The fair report privilege does not protect a publisher who adds defamatory assertions not contained in any official record. As articulated in *Cianci v. New Times Publishing Co.*, 639 F.2d 54, 68 (2d Cir. 1980), privilege does not immunize embellishment or defamatory implications beyond the contents of the proceeding itself.

C. Defendants Omitted the Dispositive Trial-Court Docket

Defendants did not attach the trial-court docket establishing the relevant timeline: the appellate mandate issued July 9, 2025; Plaintiff voluntarily surrendered on July 24, 2025; no post-mandate capias issued until July 29, 2025, after Plaintiff was already in custody. Judicial notice does not permit the Court to ignore pleaded facts or resolve disputed inferences in Defendants' favor at Rule 12.

D. Judicial Notice Cannot Resolve Disputed Facts

Whether any attempts were made to serve a warrant, whether Plaintiff avoided law enforcement, and whether he refused to serve a sentence are disputed factual issues unsuitable for resolution on a motion to dismiss.

## IV. DEFENDANTS CANNOT ESTABLISH SUBSTANTIAL TRUTH OR "GIST OR STING" AT THE PLEADING STAGE

Substantial truth fails where the challenged statements materially alter the gist of the publication by adding misconduct or intent not established by the record. Even technically accurate facts are actionable if they create a false and damaging impression (*Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 517 (1991)).

The reporting states that Plaintiff refused to serve his sentence, avoided many attempts at service, was "caught" outside of Texas, and surrendered only because of a belated discovery. Those factual assertions convey a materially false narrative of Plaintiff's legal posture, enforcement status, and motive for surrender—an entirely different sting than accurate reporting of appellate posture and voluntary surrender.

The article collapses distinct legal periods—pre-mandate bond, post-mandate custody requirements, and later jail processing—to imply refusal and evasion. Under Texas Rule of Appellate Procedure 43.5(b), when a defendant is not in custody following issuance of the mandate, the trial court "must issue a capias commanding law enforcement to arrest the defendant so the sentence may be executed"; the rule imposes no duty on the defendant to appear, surrender, or take action, and provides no notice requirement to the defendant. Here, the trial court issued the capias on July 29—after Plaintiff had already surrendered and was in custody on July 24—conduct that is the opposite of evasion or refusal. Treating these periods as interchangeable materially changes the meaning of the events and defeats substantial truth.

Assertions that Plaintiff "avoided many attempts" or "refused" to serve a sentence are concrete, verifiable factual claims, and no record cited by Defendants substantiates them.

Defendants also misstate the legal effect of the appellate opinion they cite. The article states that Plaintiff "was told to return to Texas by Feb. 1 to begin serving his sentence," a claim unsupported by any court order, notice, or docket entry and contradicted by Texas appellate procedure governing post-mandate execution of sentence.

An intermediate appellate opinion does not render a conviction final or executable until issuance of the mandate. Plaintiff continued to pursue further appellate review through a Petition for Discretionary Review, as reflected on the docket and explained to Defendants in the written correction notice. Characterizing the conviction as conclusively "upheld" on February 1, 2025 and Plaintiff as having refused to serve a sentence before mandate issuance in July 2025 materially alters the legal posture and the gist of the record.

Defendants' reliance on indictments and warrant activity arising after publication demonstrates the absence of contemporaneous support for the article's assertions. Later-filed allegations cannot retroactively supply factual or legal justification for statements made at the time of publication, particularly where Plaintiff has been continuously incarcerated since July 24, 2025.

## V. PLAINTIFF HAS PLAUSIBLY ALLEGED ACTUAL MALICE

A. Publication Contrary to Available Records

Defendants purposefully avoided the truth by ignoring the dispositive trial-court docket, asserting facts unsupported by any record, distorting a source that directly contradicted their narrative, and continuing publication after receiving documentary proof of falsity—conduct that satisfies actual malice as articulated in *Harte-Hanks Communications, Inc. v. Connaughton*, 491 U.S. 657 (1989).

Plaintiff has plausibly alleged that Defendants published assertions of refusal, evasion, and multiple service attempts despite the absence of any record supporting those claims. Publishing statements that contradict the available record supports an inference of reckless disregard.

B. Context-Stripping and Distortion From Defendants' Own Source

Defendants relied extensively on Plaintiff's website as a primary source. That website expressly explains Plaintiff's sobriety timeline, his understanding of custody requirements, and the circumstances of his surrender. Defendants nevertheless implied ongoing alcohol abuse, invented a belated "discovery" of custody requirements, and portrayed voluntary surrender as evasion.

Where a defendant's chosen source directly contradicts the defamatory implication published, actual malice is plausibly alleged. Where a publisher relies on a plaintiff's own statements as a source but alters or strips context so as to reverse their meaning, such distortion supports an inference of actual malice (*Masson*, 501 U.S. at 517).

C. Fabrication of Motive and Mental State

The article states that Plaintiff surrendered "only because he discovered" a custody requirement. This attribution of motive and realization appears in no public record and is unsupported by Defendants' source. Inventing motive supports actual malice.

D. Notice, Proof, and Continued Publication

As pleaded, Defendants were placed on written notice shortly after publication identifying specific false statements (Compl. Exs. E & F). Defendants declined to correct the article and continued publication unchanged. Continued publication after notice of concrete falsity supports a plausible inference of reckless disregard.

Plaintiff's allegations satisfy the constitutional malice standard, which is met where the defendant knew the statement was false or acted with reckless disregard for its truth at the time of publication (*New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964)).

E. Reliance on Later-Created Records

Defendants' attempt to justify the article with later-created indictments and warrants further supports reckless disregard. Post-publication records cannot supply pre-publication knowledge.

Actual malice is a fact-intensive inquiry inappropriate for resolution on a motion to dismiss.

## VI. DEFENDANTS' DAMAGES AND "LIBEL-PROOF PLAINTIFF" ARGUMENTS FAIL

Defendants' libel-proof argument is contradicted by the article itself, which reports that Plaintiff's exemplary conduct on bond over several years justified his continued release and permission to reside out of state—facts inconsistent with a claim that his reputation was already beyond further harm.

Plaintiff has plausibly alleged reputational harm caused by false statements portraying him as a fugitive who refused to serve a sentence and engaged in alcohol abuse and ongoing misconduct. General damages are presumed for defamatory statements of fact.

The libel-proof plaintiff doctrine is narrowly applied and rarely resolved at the pleading stage. Plaintiff is not so notorious that additional false statements could cause no further harm. Plaintiff is not libel-proof merely due to prior criminal proceedings where the challenged publication adds new and more damaging accusations, as articulated in *Guccione v. Hustler Magazine, Inc.*, 800 F.2d 298, 303–04 (2d Cir. 1986). The extent of damages is a factual issue.

## VII. CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss should be denied in its entirety.

Respectfully Submitted,

January 9, 2026

*[signature]*

Edward David James III
Pro Se Plaintiff
Inmate #154390
Potter County Detention Center
13100 NE 29th Ave
Amarillo, TX 79111

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

EDWARD DAVID JAMES III,
    Plaintiff,

v.                                                                                 CASE NO. 2:25-CV-00253-Z

SARAH E. CLARK, individually and in her
capacity as an employee and agent of
Gray Television, Inc.;
GRAY TELEVISION, INC.;
JOHN DOES 1–10,
    Defendants.

PROPOSED ORDER

**ORDER**

Before the Court is Defendants' Motion to Dismiss. Having considered the Motion, Plaintiff's Response, and the applicable law, the Court finds that the Motion should be DENIED.

It is therefore **ORDERED** that Defendants' Motion to Dismiss is DENIED.

SIGNED this ___ day of _____, 2026.

_____
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

I certify that on this 12 day of Jan, 2026, a true and correct copy of the foregoing Plaintiff's Response to Defendants' Motion to Dismiss was served by United States mail, postage prepaid, upon the following counsel of record:

Laura Lee Prather
Catherine L. Robb
Michael Joseph Lambert
*Haynes and Boone, LLP*
98 San Jacinto Boulevard, Suite 1500
Austin, TX 78701

January 9, 2026

Edward David James III
Pro Se Plaintiff
Inmate #154390
Potter County Detention Center
13100 NE 29th Ave
Amarillo, TX 79111

11

