IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

EDWARD DAVID JAMES III

       Plaintiff,

v.

SARAH E. CLARK, *et al.*,

       Defendants.

2:25-CV-253-Z-BR

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

Before the Court are the Findings, Conclusions, and Recommendation ("FCR") of the United States Magistrate Judge to grant Defendants' Motion to Dismiss. ECF No. 28. An Objection, a Response, and a Reply to the FCR have been filed. ECF Nos. 30, 31, 35. After making an independent review of the pleadings, files, and records in this case, the Court agrees with the ultimate conclusions of the FCR and most of its reasoning. But for ease of reading and understanding, the Court **REJECTS** the FCR (ECF No. 28) and replaces it with this Order.[1]

For the reasons below, the Defendants' Motion to Dismiss (ECF No. 16) is **GRANTED** and this case is **DISMISSED WITH PREJUDICE.**

**MOTIONS FILED AFTER THE FCR**

After the FCR was filed, the parties filed an Objection (ECF No. 30), Response (ECF No. 31), and Reply (ECF No. 35) in accordance with the procedures provided by the Local Rules. *See* N.D. TEX. LOC. R. 72.2. But the parties have filed several *other* motions and miscellaneous filings as well. The Court will first address each of these filings, because they relate directly to the review of the FCR and Motion to Dismiss.

---

[1] Many portions of the FCR are reproduced verbatim below. Where there are differences, this Order is controlling.

## I. Omnibus Motion (ECF No. 29)

The FCR was filed on March 30, 2026. ECF No. 28. On April 7, Plaintiff Edward David James III ("Plaintiff" or "James") filed an omnibus motion asking the Court to (1) "hold ruling on the [FCR] in abeyance" pending an April 20 criminal hearing bearing on the issues in this case; (2) extend the deadline to file objections; and (3) grant leave for Plaintiff to supplement the record. ECF No. 29. The first and second requests are moot.

As to Plaintiff's third request, the Court will not allow the requested supplementation. A court ruling on a motion to dismiss for failure to state a claim may rely only on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008). Moreover, a court considering objections to a magistrate judge's FCR has discretion whether to consider newly-proffered evidence not presented to the magistrate judge. 28 U.S.C. § 636(b)(1) ("The judge *may* also receive further evidence" when considering objections to a magistrate judge's FCR. (emphasis added)); *see also Freeman v. Cnty. of Bexar*, 142 F.3d 848, 850–53 (5th Cir. 1998) (explaining that the district court may consider new evidence, but is not required to); *Gentry v. Hamilton-Ryker IT Sols., L.L.C.*, 102 F.4th 712, 726 (5th Cir. 2024) ("A district court *may* receive further evidence when considering objections to a magistrate judge's recommendation." (emphasis added)); *Davis v. Fernandez*, 798 F.3d 290, 292 (5th Cir. 2015) ("[T]he district court is not necessarily required to accept the new evidence" filed "when objecting to a magistrate judge's [FCR].").

Here, Plaintiff requests leave to file four new exhibits. ECF No. 29 at 4. Exhibits A, B, and C could have been presented to the magistrate judge but were not. ECF No. 29-1 at 1–10. *See Freeman*, 142 F.3d at 852 ("[T]he district court should not be compelled to ignore that the parties had a full and fair opportunity to present their best evidence to the

2

magistrate judge."). Exhibit D is a non-dispositive motion in a criminal case involving Plaintiff that potentially bears on the defamation claims here. ECF No. 29-1 at 13–16. But the parties have filed further updates regarding the substantive outcome of that case. ECF Nos. 32, 33, 37. Those filings are more relevant and helpful to the Court. *See Freeman*, 142 F.3d at 853 (listing "the importance of the omitted evidence to the moving party's case" as a relevant consideration in exercising discretion whether to consider newly-proffered evidence).

The Court is mindful that "[t]he fact that [Plaintiff] is *pro se* weighs heavily in favor of accepting his evidence submitted on objection to the magistrate judge's report." *Davis*, 798 F.3d at 293. But here, the requested supplementation was submitted separately from and before James's formal objection. James seems to have been concerned that the Court would consider the FCR before he had a chance to file his objection. Moreover, at least some of the exhibits are duplicative of those James later presented with his Objection. *Compare* ECF No. 29-1 at 2, *with* ECF No. 30-1 at 12. For all these reasons, the prejudice to Plaintiff of denying this motion is minimal. Accordingly, Plaintiff's Motion to Hold Ruling in Abeyance and Leave to Supplement (ECF No. 29) is **DENIED.**

### II. Motion to Strike Plaintiff's Objections (ECF No. 31)

Plaintiff filed his Objections on April 14. ECF No. 30. On April 22, Defendants filed a Motion to Strike Plaintiff's Objections. ECF No. 31. Defendants first argue that the Objection should be struck in its entirety for not complying with page limit and other formatting requirements provided by the Local Rules of this Court. ECF No. 31 at 5–6. The Court acknowledges that Plaintiff's Objections did not comply with the Local Rules—as does Plaintiff. ECF No. 35 at 5. However, considering Plaintiff's *pro se* and incarcerated statuses, this first failure to comply with the Local Rules was excusable.

Defendants next argue that the Court should at least "strike the exhibits, arguments, and commentary Plaintiff presents to this Court for the first time." ECF No. 31 at 6. But as

discussed above, the Court has discretion whether or not to consider new evidence filed after the FCR . *See Freeman*, 142 F.3d at 850–53. The Court considers Plaintiff's *pro se* status a compelling reason to allow the newly submitted evidence and arguments. *See Davis*, 798 F.3d at 293. The Court is mindful that it is limited in what it can consider on a motion to dismiss. *See Dorsey*, 540 F.3d at 338. In its analysis of the evidence, the Court will consider only such evidence as can be properly considered at this stage. Defendants' Motion to Strike (ECF No. 31) is **DENIED**.

### III. Motion to Strike Plaintiff's Reply (ECF No. 36)

Plaintiff filed a Reply in support of his Objections on May 8, 2026. ECF No. 35. On May 11, Defendants filed a Motion to Strike Plaintiff's Reply because it violates the Local Rules. ECF No. 36 at 1. The Local Rules provide that "[a] reply brief must not exceed 10 pages." N.D. TEX. LOC. R. 7.2(c). Plaintiff filed a fourteen-page reply brief. ECF No. 35. A district court has discretion to strike a filing for failure to comply with the Local Rules. *See Victor F., by Gene F. v. Pasadena Indep. Sch. Dist.*, 793 F.2d 633, 635–36 (5th Cir. 1986). And *pro se* litigants are not excused from complying with the Local Rules. *See Luken v. Collins*, 3 F.3d 437 (5th Cir. 1993). By the time Plaintiff filed his Reply, he was aware of his obligation to comply with the Local Rules—he acknowledged his previous failure to do so *in the Reply*. ECF No. 35 at 5. Nonetheless, he failed to follow this important rule that ensures fairness to the parties.[2] Moreover, prejudice to Plaintiff from striking his Reply is minimal. He has been given the chance to file Objections to the FCR (ECF No. 30), has filed other miscellaneous filings since the FCR that the Court will consider (ECF Nos. 32, 37), and filed a response and sur-reply to the original Motion to Dismiss (ECF Nos. 23, 27). Accordingly, Defendants' Motion to Strike Plaintiff's Reply (ECF No. 36) is **GRANTED**.

---

[2] James requests retroactive leave to exceed the page limit but does not explain why he should be given more pages than other litigants. ECF No. 38. His request is denied.

4

## IV. Other Filings After the FCR

The parties have presented three other filings since the filing of the FCR outside of the normal Objection briefing framework. ECF Nos. 32, 33, 37. All relate to criminal proceedings potentially relevant to the underlying claims here which occurred after the filing of the FCR. *Id.* As noted above, the Court has discretion whether to consider newly-proffered evidence that was not before the magistrate judge. *See Freeman*, 142 F.3d at 850–53. Here, because the evidence relates to proceedings that occurred after the FCR and provides relevant information about those proceedings, the Court will consider the evidence.

### MOTION TO DISMISS

Having considered each of the relevant motions and filings since the FCR, the Court now considers the Motion to Dismiss (ECF No. 16).

### I. Introduction

James brings this defamation action against Defendants Gray Local Media, Inc. ("Gray Media") and Sarah E. Clark ("Clark") (collectively, "Defendants") in response to Defendants' November 2025 news coverage of James's criminal conviction and subsequent extradition from New Jersey to serve his sentence. Specifically, James complains about two news stories disseminated by KFDA-TV in Amarillo: an online article authored by Clark titled "Amarillo man who refused to serve prison sentence extradited from New Jersey" that appears on KFDA-TV's website, and a presumably similar news story broadcast on KFDA-TV. He claims that the two pieces defamed him by saying that he "refused" to serve his sentence, "evaded numerous law enforcement attempts to serve an arrest warrant," and that he was "caught outside of Texas." ECF No. 3 at 3. James seeks a preliminary injunction, asking the Court to order Defendants to: (1) remove the offending article from KFDA-TV's website and to not republish it; (2) place a temporary notice on the article's URL stating "This article is currently unavailable pursuant to a federal court order pending litigation

5

concerning its accuracy;" and (3) if the website article is republished after expiration of injunctive relief, to include a correction notice "accurately reflecting the procedural history and correcting the false statements identified in Plaintiff's complaint." ECF No. 6 at 6.

James's request for a temporary restraining order and preliminary injunction initially was denied by the Court because he had neither paid the filing fee nor applied to proceed *in forma pauperis*, but he was given leave to re-urge his injunction request once the filing fee issue was resolved. ECF No. 8. On December 11, 2025, James was granted leave to proceed *in forma pauperis*. ECF No. 11. James filed the pending Motion to Reconsider his injunction request. ECF No. 10. Defendants ask the Court to dismiss James's Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). ECF No. 16. James responded to the Motion on January 16, 2026 (ECF No. 23), and filed a sur-reply on February 17, 2026. (ECF No. 27). The Magistrate Judge filed her FCR recommending the Court grant the Motion to Dismiss on March 30, 2026. ECF No. 28. James objected to the FCR on April 14, 2026. ECF No. 30.

## II. Legal Standard

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation and citation omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and footnote omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" do not establish facial plausibility. *Iqbal*, 556 U.S. at 678. A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing

6

*Twombly*, 550 U.S. at 557). In evaluating the sufficiency of a complaint, courts accept well-pleaded factual allegations as true, but do not credit conclusory allegations or assertions that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Aus.*, 836 F.3d 467, 469 (5th Cir. 2016).

The Court also is mindful it "must construe the pleadings of *pro se* litigants liberally . . . to prevent the loss of rights due to inartful expression." *Perez v. Dall. Cnty. Jail*, No. 3:20-CV-1761, 2022 WL 1215781, at *2 (N.D. Tex. Mar. 31, 2022) (internal citations omitted); *see also Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006). "But 'liberal construction does not require that the Court . . . create causes of action where there are none.'" *Rolan v. LaSalle Sw. Corr.*, No. 3:20-CV-2842, 2021 WL 5568168, at *3 (N.D. Tex. Nov. 1, 2021) (quoting *Smith v. CVS Caremark Corp.*, No. 3:12-CV-2465, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013)). While courts hold *pro se* plaintiffs to a more lenient standard than attorneys when analyzing complaints, such plaintiffs must nevertheless plead factual allegations that raise the right to relief above a speculative level. *Id.* (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)).

A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court also may consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to [his] claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). On a motion to dismiss a defamation claim, courts may consider the allegedly defamatory publications. *See Nat'l Rifle Ass'n of Am. v. Ackerman McQueen, Inc.*, No. 19-CV-

7

2074, 2021 WL 3618113 (N.D. Tex. Aug. 16, 2021); *Nguyen v. Hoang*, 318 F. Supp. 3d 983, 998 (S.D. Tex. 2018).

### III. Factual Background

The following facts are taken from James's Complaint and its attachments and court documents of which the Court takes judicial notice.

#### A. The Underlying Charges

In February 2020, the State of Texas issued an indictment charging James with family violence assault by occlusion ("intentionally, knowingly or recklessly impeding the normal breathing or circulation of [his then-girlfriend's] blood by applying pressure to her throat or neck"). *See James v. State*, No. 07-24-49-CR, 2025 WL 338308, at *2 (Tex. App.—Amarillo Jan. 29, 2025), *pet. for discretionary review ref'd* (Apr. 16, 2025), *reh'g denied* (May 7, 2025). James was arrested on June 30, 2020. ECF No. 3-1 at 8. He was released three days later on a $10,000.00 bond. *Id.* at 8, 10.

While out on bond and awaiting trial, James moved to New Jersey (with permission of the court) to pursue a romantic relationship with his former seventh-grade teacher, a relationship that began after both were adults. They later married. ECF No. 3 at 6; ECF No. 3-1 at 15. However, he admits that he struggled with maintaining sobriety during part of this timeframe and relied on alcohol to help him with the PTSD he experienced after being released from prison on an earlier conviction unrelated to the 2020 charge.[3] ECF No. 3-1 at 7–9. He has now been sober for five years and was leading sobriety classes prior to his current incarceration. ECF No. 3 at 6.

---

[3] James states that he spent six years in prison on the unspecified earlier charge because "it's a felony crime for teens who are more than 3 years apart to have a sexually active consensual relationship. [His daughter's] mom and I were 3 years and 5 months apart (18 and 15, senior and sophomore). I spent 6 years in prison for it, which nearly destroyed my life." ECF No. 3-1 at 6.

In January 2024, James voluntarily returned to Amarillo for trial, and a jury found him guilty. He was sentenced to five years in prison. *James*, 2025 WL at *2. After 31 days in jail, he was granted release on bond pending appeal. ECF No. 3-1 at 9. The Texas trial court judge allowed him to return to New Jersey in August 2024. *Id.*

### B. Appeal of the Underlying Conviction and Extradition

On January 29, 2025, the Seventh Court of Appeals issued a Judgment and Memorandum Opinion affirming James's conviction. *James*, 2025 WL at *5. After the appellate court issued its opinion, James stopped checking in with his bondsman.[4] ECF No. 3-1 at 10. On February 3, 2025, the trial court issued a bond surrender warrant. *Id.* at 12. On July 9, 2025, the appellate court issued its mandate. *Id.* at 10, 12. On July 24, 2025, James turned himself in to the Ocean County, New Jersey, police department on an outstanding warrant. *Id.* at 13. He was extradited to Texas on November 2, 2025, and booked into the Potter County Detention Center two days later. *Id.* at 5.

### C. Defendants' News Coverage

On November 8, 2025, Defendants published an article on the KFDA-TV website, newschannel10.com, with the headline: "Amarillo man who refused to serve prison sentence extradited from New Jersey" (the "Article"). ECF Nos. 3 at 3, 3-1 at 2–5. The Article states its reliance on police reports, James's court records and James's website, www.StandWithEdwardJames.com, and describes the events leading up to James's extradition from New Jersey to Texas. ECF No. 3-1 at 2–5. Describing James as a "man who went to extraordinary lengths to fight his conviction," the Article covers events leading up to James's criminal charge, his subsequent move to New Jersey, his conviction and his post-conviction activities. *Id.* A news story apparently was broadcast on KFDA-TV on or about

---

[4] James's bondsman "remained aware that he was still at his approved New Jersey address." ECF No. 3-1 at 20.

November 9, 2025, (the "Broadcast") that had the same narrative as the Article. ECF No. 3 at 3; ECF No. 27.

On November 24, 2025, James filed his Complaint alleging that the Article and Broadcast defamed him and harmed his reputation. ECF No. 3.

## IV. James's Allegations of Defamation

### A. James's Complaints About the Article

James's Complaint alleges that the following statements from the Article are defamatory: (1) The "headline, broadcast narration, and captions, as well as the structure and imagery of the article" "state or strongly imply" that James refused to serve his sentence, fled, and was "caught outside of Texas" (ECF No. 3 at 3); (2) The claim that James "avoided many attempts by law enforcement to serve the arrest warrant" and remained a fugitive "for months" (*Id.*; ECF No. 23 at 2); (3) That he surrendered "only after a belated 'discovery' of custody requirements" (*Id.* at 2); (4) That he was told to return to Texas by February 1, 2025, to begin serving his sentence (*Id.* at 11); (5) Referring to his relationship with "an older married woman" who was his seventh-grade teacher and referencing his past struggles with alcohol as a current problem (*Id.* at 5); and (6) Failing to show the context behind his PTSD, efforts towards sobriety, and various appeals of his sentence (*Id.*). James alleges that "Defendants selectively extracted isolated lines [from his website] and mischaracterized them to create the false impression of a man with a pattern of instability, deception or ongoing misconduct." *Id.*

### B. James's Complaints About the Broadcast

James alleges that the Broadcast was substantially the same as the Article. ECF No. 3 at 3; ECF No. 27. While James did not provide the Broadcast or a transcript thereof for the Court to evaluate, the Court will assume for the purposes of this Motion to Dismiss that the

Broadcast contained identical statements as the Article. In addition, the Court will assume that the Broadcast reported that James was "caught outside of Texas." *Id.*[5]

### V. Legal Analysis

#### A. James's Defamation Per Se Claim

A statement is defamatory "if it tends to injure a person's reputation and thereby expose the person to public hatred, contempt, ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation." *USA Today v. Ryan, LLC,* No. 09-22-432-CV, 2024 WL 1914792, at *11 (Tex. App.—Beaumont 2024, pet. denied) (citing TEX. CIV. PRAC. & REM. CODE § 73.001). To bring a claim for defamation under Texas law, the plaintiff must establish the following elements: (1) publication of a false statement of fact to a third party; (2) the statement must concern the plaintiff and be defamatory; (3) the publication must be made with the requisite degree of fault; and (4) the publication must cause damages. *Walker v. Beaumont Indep. Sch. Dist.,* 938 F.3d 724, 743 (5th Cir. 2019) (citing *In re Lipsky,* 460 S.W. 3d 579, 593 (Tex. 2015)). The status of the person allegedly defamed determines the requisite degree of fault. A private individual needs to prove only negligence, but a public figure must prove actual malice. *Lipsky,* 460 S.W.3d at 593. Damages must be shown unless the statements are defamatory *per se* such that damages are presumed. Defamation *per se* "refers to statements that are so obviously harmful that general damages may be presumed." *Walker,* 938 F.3d 724, 743.

The first—and dispositive—question before the Court is whether Defendants made a false statement. "In a defamation suit against a media defendant over a matter of public concern, the plaintiff bears the burden of proving falsity." *Walker,* 938 F.3d at 743. Courts uniformly hold that news stories regarding crimes and related proceedings are matters of

---

[5] James ascribes this statement to both the Article and the Broadcast. As discussed below, the statement does not appear in the Article. *See generally* ECF No. 3-1 at 2–5.

11

"public concern." *See, e.g., Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 492 (1975) ("The commission of crime, prosecutions resulting from it, and judicial proceedings arising from the prosecutions . . . are without question events of legitimate concern to the public."); *Brady v. Klentzman*, 515 S.W.3d 878, 884 (Tex. 2017) ("Public matters include, among other things, commission of crime, prosecutions resulting from it, and judicial proceedings arising from the prosecutions." (internal marks omitted)).

"In determining whether a statement is false, Texas has adopted the substantial-truth doctrine." *Walker*, 938 F.3d at 743. The substantial-truth doctrine "precludes liability for a publication that correctly conveys a story's 'gist' or 'sting' although erring in the details." *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 115 (Tex. 2000). When considering the "gist" of a broadcast or article, courts "examin[e] how a person of ordinary intelligence would view it." *Walker*, 938 F.3d at 743. Here is the critical test: "the court must determine if a broadcast taken as a whole is more damaging to the plaintiff's reputation than a truthful broadcast would have been, in the mind of the average person." *Id.* at 743–44 (internal marks omitted); *see also AOL, Inc. v. Malouf*, No. 05-13-01637-CV, 2015 WL 1535669, at *4 (Tex. App.—Dallas Apr. 2, 2015) (news article was substantially true although it stated that plaintiff had been charged with criminal Medicaid fraud when the charges were civil and despite the article using the words "charged" and "stolen"); *Basic Cap. Mgmt., Inc. v. Dow Jones & Co.*, 96 S.W.3d 475, 481–82 (Tex. App.—Austin 2002, no pet.) (article stating that investment firm had been involved in money laundering was substantially true although only two employees had been charged with fraud and conspiracy, not money laundering, and company was only mentioned in indictment, but not charged). If the record before the court establishes that the allegedly defaming statements are substantially true under this test, dismissal for failure to state a claim is appropriate. *See AOL*, 2015 WL 1535669, at *6.

12

The court next turns to James's allegations of defamation. It will consider the statements in two categories: (1) statements regarding James's appeal bond and attempts to fight his conviction; and (2) statements regarding James's personal life.

### 1. Category One: Statements Regarding James's Appeal Bond and Attempts to Fight His Conviction

James complains about the following allegedly false assertions in the Article and Broadcast: (1) James "refused to serve his prison sentence" (ECF No. 3 at 3; ECF No. 3-1 at 19; ECF No. 23 at 1); (2) James was "caught outside of Texas" (ECF No. 3 at 1; ECF No. 3-1 at 20; ECF No. 23 at 2); (3) James "evaded numerous law enforcement attempts to serve an arrest warrant" (ECF No. 3 at 3; ECF No. 3-1 at 20; ECF No. 23 at 1); (4) James was a "fugitive for months" (ECF No. 3 at 12; ECF No. 23 at 2); and (5) James surrendered "only after a belated 'discovery' of custody requirements" (ECF No. 23 at 2). He claims that the Article's statements depicting him as a fugitive who refused to serve his sentence were defamatory *per se* under Texas law.

The article starts by stating "Edward David James III refused to serve prison sentence." ECF No. 3-1 at 2. Providing more context later, the article explains that in 2020 James was charged with assault on a family member, arrested, released on bond, and moved to New Jersey. *Id.* at 2–3. The article then explains:

> He returned to Amarillo for his trial in January 2024. After two days of testimony, a jury found him guilty and sentenced him to 5 years in prison.
>
> . . .
>
> James immediately appealed his conviction and was released on an appeal bond. In Texas, if the sentence is less than ten years, a defendant is eligible to remain on bond until the higher court makes a decision about the case.
>
> Because of his good behavior on bond in the four years leading up to trial, James was allowed to return to New Jersey until his case was decided.
>
> As part of his bond conditions, he was ordered to wear an ankle monitor with GPS tracking.

13

> One year later, the court of appeals upheld his guilty conviction. *James was told to return to Texas by Feb. 1 to begin serving his sentence.*
>
> According to a statement on the Stand with Edward James website, after much prayer, "he decided he could not buy a ticket and put himself on a plane to go back to Texas."
>
> He told his contacts in Amarillo that he would take a flight back. On that day, he removed his ankle monitor and jammed the signal so that it could not be traced.
>
> James remained in Ocean County, New Jersey and *avoided many attempts by law enforcement to serve the arrest warrant.*
>
> . . .
>
> *After 5 months as a fugitive,* he turned himself in to Ocean County [New Jersey] police in July 2025. *But only because he discovered that the 'wrongful conviction' process can only happen when the person is in custody.*

*Id.* at 3–4 (emphasis added). The article concludes with the following statement: "James, 40, refused to serve his prison sentence after a court of appeals upheld his conviction." *Id.* at 5.

As shown above, the Article states or implies all the statements James complains of except one. The Article does not state or imply that he was "caught outside Texas." *See* ECF No. 3-1 at 2–5. In fact, the Article expressly states that James "turned himself in to Ocean County [New Jersey] police." *Id.* at 4. James does not provide the Broadcast for the Court to evaluate. However, he argues that "the Article and Broadcast reported the same narrative." ECF No. 30 at 13. The narrative expressly states that James "turned himself in," which suggests that the Broadcast also did not "state or strongly imply" that he was "caught outside of Texas." Nonetheless, the Court will assume at this stage that the Broadcast did report (in a self-contradictory manner) that James was "caught outside of Texas."

Regarding the assertions that he "avoided many attempts by law enforcement to serve the arrest warrant" and was "caught outside of Texas," James argues they are simply untrue. ECF No. 3 at 3, 4. Specifically, he alleges that no attempts were made to serve the arrest

warrant, and he lived "lawfully" at his authorized address until his voluntary surrender. *Id.* at 4. Regarding the assertion that he refused to serve his sentence, James argues the article "collapses distinct legal periods—pre-mandate bond, post-mandate custody requirements, and later jail processing." ECF No. 23 at 5. Specifically, he notes that while his conviction was "affirmed" on January 30, 2025, the "mandate" to the trial court was not issued until July 9, 2025, and the trial court did not issue a "capias" ordering him into custody until July 29, 2025. ECF No. 30 at 4–5; ECF No. 30-1 at 12. Thus, James argues, he was not ordered to begin serving his sentence until after he had surrendered to New Jersey police. ECF No. 30 at 5. He argues this makes the Article's statements that he was told to return to Texas by Feb. 1 to begin serving his sentence and refused to do so defamatory.

The undisputed truth about what happened is as follows. James admitted in the Complaint that in January or February of 2025, he failed to check in with his bondsman and his appeal bond was revoked. ECF No. 3-1 at 9, 10.[6] He does not dispute the allegation that he later "removed his ankle monitor and jammed the signal so that it could not be traced."[7] James further admits that in July, Texas "ordered him back from NJ to serve his 5-year prison sentence." ECF No. 3-1 at 10, 18. He says he was "unable to buy a ticket and put himself on a plane [to go back to Texas]" and that he decided he "had to stand and continue the fight here in New Jersey." *Id.* In fact, the Article provides screen-shot excerpts from James's website so stating, and James does not dispute their accuracy. *Id.* at 4. James further

---

[6] James argues that the Court cannot rely on statements from his own website. ECF No. 30 at 7–10. That argument is addressed in the Objections section below.

[7] James insists that his "silence on that allegation . . . does not convert it into an admission." ECF No. 30 at 9. Regardless, James has since pled guilty to tampering with an electronic monitoring device. ECF No. 33-1. The Court can consider "matters of which a court may take judicial notice" at this stage. *Dorsey*, 540 F.3d at 338.

admits that after surrendering in New Jersey, he fought the extradition process back to Texas. *Id.* at 11–12.

This series of events does provide at least some factual support for some of the challenged statements. For example, although he did surrender in New Jersey, his refusal to return to Texas, including by fighting the extradition process, can be described as a "refusal to serve his sentence." And destroying his ankle monitor so his location could not be traced was certainly an attempt to evade police serving his outstanding arrest warrant.

However, the statements in the article go further than the record literally supports. Specifically, the article implies that James began refusing to serve his sentence in February. ECF No. 3-1 at 4 ("James was told to return to Texas *by Feb. 1 to begin serving his sentence.*" (emphasis added)). But he wasn't required to start "serving his sentence" until July (although he was still required and failed to report to his bondsman in Texas beginning in February). And the article states James "avoided *many attempts* by law enforcement to serve the arrest warrant." *Id.* (emphasis added). James alleges that no actual attempts were ever made, and there is no evidence of any attempts in the record. And the record does not support the Broadcast's (assumed) statement that James was "caught outside of Texas."

But while the statements may not be *literally* true, "literal truth is *not* the applicable standard." *Walker*, 938 F.3d at 749. In determining whether a publication is defamatory, the Court must consider a reasonable person's perception of the entire publication rather than individual sentences or portions of the communication. *See Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 115 (Tex. 2000) (defamation determined by looking at entire communication); *New Times, Inc. v. Isaacks,* 146 S.W.3d 144, 158–59 (Tex. 2004) ("The question . . . is to be answered by considering the entire context in which the offending material appears."); *Schauer v. Mem'l Care Sys.*, 856 S.W.2d 437, 446 (Tex. App.—Houston [1st Dist.] 1993, no

16

pet.), *disapproved on other grounds by Huckabee v. Time Warner Ent. Co.*, 19 S.W.3d 413 (Tex. 2000) ("To determine if a publication is defamatory, the court must look at the entire communication and not examine separate sentences or portions."); *Parker v. Spotify USA, Inc.*, 569 F. Supp. 3d 519, 528–29 (W.D. Tex. 2021) ("Additionally, it is well settled that the meaning of a publication, and thus whether it is false and defamatory, depends on a reasonable person's perception of the entirety of a publication and not merely on individual statements." (internal quotation omitted)). And under the substantial-truth doctrine, the Court must determine if the "[Article and Broadcast] taken as a whole [are] more damaging to the plaintiff's reputation than a truthful [Article and Broadcast] would have been." *Walker*, 938 F.3d at 743–44.

The statements, even if not literally true, do not change the "gist" of the Article, which essentially recounts James's efforts to fight both his conviction and his return to Texas to serve his sentence. Evading service of an arrest warrant is no more damaging to James's reputation than the true statements in the Article that recounted his actions of (1) disabling his tracker; (2) refusing to check in with his probation officer; (3) having a warrant issued; (4) unilaterally deciding to stay in New Jersey to "continue the fight"; and (5) belatedly turning himself in on an outstanding warrant.[8] And "refusing to serve his sentence" and being "caught outside of Texas" are no more damaging than the true statements either. This is particularly so when the statements are considered in the context of the entire publication (as they must be), which describes his surrender to New Jersey police and provides a link to James's website. *See ProPublica, Inc. v. Frazier*, No. 01-19-009-CV, 2020 WL 370563, at *2– 3 (Tex. App.—Houston [1st Dist.] Jan. 23, 2020, pet. denied) (recognizing the benefit of

---

[8] James blames the delay in turning himself in after the mandate issued on his New Jersey attorney being on vacation. ECF No. 3-1 at 13. This goes to the reason behind him remaining in New Jersey, not the truth of whether he remained in New Jersey after the mandate issued, and he alleges no facts to show that Defendants knew the reason for the delay.

providing hyperlinks to source materials). Under the authorities cited above, the entirety of the Article remains substantially true, "although erring in the details." *Walker,* 938 F.3d at 743.[9] The Article and Broadcast, as a whole, are no more damaging to James's reputation than a completely truthful publication would have been "in the mind of the average person." *Id.* at 743-44.[10]

James also contends that the Article's statement that he "remained a fugitive for months" is defamatory because, although the appellate court's opinion affirming his conviction was issued on January 30, 2025, the mandate was not issued until July 9, 2025, so, as a result, he claims that he was not required to return to Texas to serve his sentence until that date. ECF No. 23 at 5. James alleges that the Article, by "collapsing the February administrative entry [bond revocation] with the July appellate mandate, Defendants created a wholly false narrative that [James] defied a lawful order to commence punishment, thereby reinforcing their defamatory theme that he 'refused to serve his sentence' and was a fugitive." ECF No. 3 at 11. He further points out that he voluntarily surrendered to New Jersey authorities on July 24, 2025, and, thus, claims that the term "fugitive" does not accurately describe his status.

"Fugitive" is defined under Texas law as "a person for whom a valid arrest warrant has been issued." *See* TEX. PEN. CODE 38.01(5). An excerpt from James's website attached to his Complaint as an exhibit admits that

> [o]n January 29, 2025, I lost my first appeal. My PTSD returned full force. After years of perfect compliance, I couldn't bring myself to check in with my

---

[9] The Court notes that it must be particularly cautious about policing errors of law by reporters as defamation. *See Polk Cnty. Publ'g Co. v. Coleman,* 685 S.W.3d 71, 78 (Tex. 2024) ("[E]rrors of law by those reporting on the law are not automatically actionable as defamation. If it were otherwise, the 'freedom . . . of the press' would be hard-pressed indeed.")

[10] The Court assumes for the purposes of this Motion that James's reputation, as evidenced by his postconviction rehabilitation efforts (*see* ECF 3-1 at 14-15), is not libel-proof, as claimed by Defendants in their Motion.

18

> bondsman out of sheer paralysis and anxiety. **My bond was revoked** while I waited on my second appeal.

ECF No. 3-1 at 9 (emphasis added). The exhibit further shows that "a bond surrender warrant issued on February 3, 2025" and that "[y]ou will see in public records he was 'arrested' as a 'fugitive.'" *Id.* at 10. Because the allegation that James was a "fugitive" for at least a portion of his post-appeal stay in New Jersey is true, it does not support a defamation *per se* claim. The issue of when he became a fugitive is immaterial, since he was, in fact, a "fugitive" regardless of whether the state of Texas attempted to execute the warrant. Whether he became a fugitive when his bond was revoked or when his conviction was upheld and the mandate issued is a distinction without a difference. He was a "fugitive" as defined by Texas law. The Article accurately reported James's fugitive status, as reflected by both public record and the excerpts from James's website as cited in the Article.

The Article's assertion that James voluntarily surrendered "only" because "he discovered that the 'wrongful conviction' process in Texas can only happen when the person is in custody" does not change the Court's determination that James has failed to show that the Article, as a whole, is defamatory. While the Article alleges that James voluntarily surrendered "only" after discovering that he must be in custody to bring a wrongful conviction claim, James's website excerpts shown in the Article state simply that James "turned himself in to our county jail to fight extradition and begin the Habeas Corpus (wrongful imprisonment) process, which can only work if one is in custody." ECF No. 3-1 at 4. Even assuming that the Article's statement about the motivation behind his voluntary surrender is false does nothing to alter the fact that the Article is substantially true. While it may not have been his "only" motivation in turning himself in, James admits on his website—as shown in the website excerpts in the Article and attached to his Complaint—that at least one

motivation for turning himself in was to "fight extradition and begin the Habeas Corpus (wrongful imprisonment) process." *Id.*

### 2. Category Two: Statements about James's Personal Life

The statements made about his personal life are also substantially true. His Complaint shows that he did, in fact, marry an older woman who formerly was his seventh-grade teacher. ECF No. 3 at 6. While the Article did not specify that both James and his teacher were adults at the time they initiated their personal relationship, it did not say (or even suggest) that they were not, although it did not state that the two eventually married.

The Article makes two references to James's admitted bouts with alcohol. First, it states that "[h]e also confesses to heavy drinking throughout his time on bond in New Jersey." ECF No. 3-1 at 3. The statement was made in a section of the Article discussing his time in New Jersey before his trial. *Id.* Secondly, the Article states that "he does confirm that he struggled with alcohol abuse in the same timeframe." *Id.* at 5. This statement was made in the context of discussing the underlying charges that led to his conviction. *Id.* In addition, the Article includes a website excerpt stating:

> As you may have read on here, after sentencing, the judge released him on bond pending appeal in Feb of 2024 and allowed him to live back in New Jersey. He continued his life as before, leading sobriety classes through the nonprofit he created called Phoenix Reformation, attending college to become a chaplain, and connecting with his Men's Bible Study group at our local church.

*Id.* at 4. Taking the Article as a whole, both statements of which James complains clearly refer to past events. Moreover, the Article specifically notes that James was found to have "good behavior on bond" and even notes that he led sobriety classes. *Id.* at 3, 4. And nowhere does the Article conflate his past struggles with alcohol and his current sober status. Thus, the statements James complains of do not support his defamation *per se* claim.

20

In summary, the face of the Complaint, as well as court records of which this Court takes judicial notice, show that the Article is substantially true and, accordingly, does not state a plausible claim. James's defamation *per se* claim must be dismissed.

### B. James's Defamation by Implication Claim

A defamation by implication claim arises "when discrete facts, literally or substantially true, are published in such a way that they create a substantially false and defamatory impression by omitting material facts or juxtaposing facts in a misleading way. *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 115 (Tex. 2000). Defamation by implication "may emerge from a publication or broadcast's discrete parts" and "includes necessary logical entailments as well as meanings that are merely suggested." *Dall. Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 629 (Tex. 2018). It "refers to . . . inferential, illative, suggestive, or deductive meanings." *Id.* To determine defamation by implication, the court must "determine whether the implication the plaintiff alleges is among the implications that the objectively reasonable reader would draw." *Id.* at 629. The court must "not place overwhelming emphasis on any single term or focus on individual statements to the exclusion of the entire publication." *Id.* at 631 (internal quotation omitted). The *Tatum* court held that

> [I]f a communication, viewed in its entire context, merely conveys materially true facts from which a defamatory inference can reasonably be drawn, the libel is not established. But if the communication, by the particular manner or language in which the true facts are conveyed, supplies additional, affirmative evidence suggesting that the defendant *intends* or *endorses* the defamatory inference, the communication will be deemed capable of bearing that meaning.

*Id.* at 635 (emphasis in original) (quoting *White v. Fraternal Order of Police*, 909 F.2d 512, 520 (D.C. Cir. 1990)). Thus, a plaintiff who seeks to recover based on a defamatory implication—whether a gist or a discrete implication—must point to "additional, affirmative evidence" within the publication itself that suggests the defendant "intends or endorses the

defamatory inference." *Id.* The evidence of intent "must arise from the publication itself" and be evident when evaluating the publication objectively. *Id.* at 635.

In his defamation by implication claim, James again takes issue with the word "fugitive," alleging that Defendants "deliberately conflated this technical legal term with its ordinary, pejorative meaning, thereby creating the false and damaging impression that [James] was actively fleeing justice." ECF No. 3 at 12. However, he alleges no "additional, affirmative evidence" evident in the Article to show that Defendants intended a defamatory meaning instead of intending to quote public records that labeled James as a "fugitive." In addition, the Article specifically acknowledged that James's website states that "he is not a fugitive and was only residing in New Jersey because Texas allowed him to." ECF No. 3-1 at 4. This allegation does not support a defamation cause of action.

James also complains that the Article's "structure, framing, headline, and selective omissions were designed to create the false impression that [James] fled justice, was hiding, and was apprehended as a fugitive." *Id.* He complains about the use of his mugshot twice, once superimposed over a map of the United States with a line from New Jersey to Texas, and both with the statement that he "refused to serve his prison sentence." *Id.* at 12–13. He claims that such illustrations "deliberately reinforced the false narrative that [James] defied lawful authority and had to be hunted down and returned to Texas." *Id.* at 13. As discussed above, use of the term "fugitive" is not defamatory, nor is the statement that James refused to serve his sentence. Further, he does not plausibly allege that the mugshot was false in any way. The map with the line between New Jersey and Amarillo accurately illustrates James's extradition. Nowhere does the Article state that he "fled justice" or "was hiding." The Article's "structure, framing [and] headline" do not support James's defamation claim, nor has he alleged plausible additional evidence to indicate Defendants' defamatory intent as to the structure, frame or headline.

Next, James objects that the Article "quoted the assault allegations in detail and relied exclusively on the State's appeal brief" in discussing the underlying charges, while omitting any reference to his defenses, including that the investigation was flawed. ECF No. 3 at 15–16. He also complains that the Article referred to his defense solely in a reference to his website "containing excerpts of the trial transcript" and frames his efforts as "merely an attempt to 'discredit' others," thereby furthering "the false and damaging impression that [James's] claims are baseless, rather than legitimate and supported by evidence." *Id.* at 16. The Court disagrees. The Article references his website, its contents and discussions of his claim of innocence, and provides a link to the website itself. It also acknowledges that James's appeal focused on challenging the veracity of the screenshots provided by the victim. ECF No. 3-1 at 4.

He also complains that, while his website stated that he "didn't recognize some of the [Facebook] messages [to the victim], the Article stated that "James himself acknowledges a faint memory of receiving the messages." ECF No. 3 at 16. He claims that the Article, "[b]y claiming [James] 'acknowledged' the messages while disregarding this clear statement disputing their authenticity, Defendants inverted the meaning of the quoted source and presented contested, late-disclosed evidence as admitted fact." *Id.* Saying that he "didn't recognize some of the messages" is a far cry from being a "clear statement disputing their authenticity." While James may have wished for more extensive coverage of his defenses, the fact that the Article does not entirely recount his version of events does not imply a defamatory intent by Defendants and thus does not support his claim of defamation by implication.

Lastly, James re-urges his claims addressed above: that (1) the Article omitted his five years of sobriety and his role as a recovery counselor, and it implies that quotes from his website about his alcoholism as current (*Id.* at 13–14); (2) the Article "stripped away the

context of voluntary surrender" and claims he turned himself in only because he could not start his wrongful conviction appeals until he was in custody so it appeared that he "acted manipulatively" (*Id.* at 14–15, 17); (3) that Defendants failed to explain that a criminal sentence is not enforceable until the appellate court issues its mandate, so the Article gave "the false impression that [James] was defying a lawful order or evading justice, when in fact he was acting in compliance with the law and court procedure.[11] (*Id.*). For the reasons stated above, these statements are substantially true and James has not plausibly alleged that Defendants intended the defamatory connotation that he now ascribes to them.

Taking all of James's allegations as a whole, he does not plausibly allege that the entirety of the Article creates a defamatory inference, nor does he allege any "additional, affirmative evidence" within the Article to suggest that Defendants intended or endorsed a defamatory inference. *Tatum*, 554 S.W.3d at 635. The Article as a whole did not misrepresent James's story as evidenced in the Complaint and public records. "Given that [Defendants] accurately reported facts, albeit not all of the facts, whether or not the story painted [Plaintiff] in an attractive light is irrelevant." *Green v. CBS Inc.*, 286 F.3d 281, 285 (5th Cir. 2002); *see also Larson v. Family Violence & Sexual Assault Prevention Ctr. of S. Tex.*, 64 S.W.3d 506, 515–16 (Tex. App.—Corpus Christi 2001, pet. denied) (holding defendant "cannot be liable for presenting a true account of events, regardless of what someone may infer from the account"). Because the Article did not create a substantially false and defamatory impression of James's actions and he does not refer to "additional affirmative evidence" within the Article showing that Defendants intended a defamatory meaning, he has failed to state a viable defamation by implication claim, and such claim must be dismissed.

---

[11] He does not explain how disabling his tracking device and failing to check in with his probation officer constitute "acting in compliance with the law and court procedure."

### C. Intentional Infliction of Emotional Distress and Negligence

The Court next considers James's state-law claims of Intentional Infliction of Emotional Distress ("IIED") and Negligence based on the Article and the Broadcast. "The Texas Supreme Court has expressly refused to recognize causes of action that merely duplicate the remedy of defamation and are creatively pled in an attempt to avoid the constitutional protections mandated by the First Amendment and the Texas Constitution." *Tex. Beef Grp. v. Winfrey*, 11 F. Supp.2d 858, 864 (N.D. Tex. 1998), *aff'd*, 201 F.3d 680 (5th Cir. 2000); *see also Provencio v. Paradigm*, 44 S.W.3d 677, 683 (Tex. App.—El Paso 2001, no pet.) ("The same protections which the First Amendment affords defendants from libel claims also protect them from non-libel claims that are based on the same defamatory publication.").

IIED is a "gap-filler" tort, "judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has *no* other recognized theory of redress." *Butler v. Collins*, 714 S.W.3d 562, 570 n.13 (Tex. 2025) (quoting *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005)). James's negligence claim fares no better. *See Bird v. W.C.W.*, 868 S.W.2d 767, 772 n.7 (Tex. 1994) ("[I]t would be ironic if an individual could avoid all the constitutional restrictions on defamation actions merely by disguising such claim in negligence terms."). Because James's emotional distress and negligence claims are based on the same publications that form the basis for his defamation claim, such claims must be dismissed for the reasons stated above. *See Snyder v. Phelps*, 562 U.S. 443, 451 (2011) (the First Amendment "can serve as a defense in state tort suits, including suits for intentional infliction of emotional distress").

25

### D. Leave to Amend

Ordinarily, a *pro se* plaintiff should be granted leave to amend his complaint prior to dismissal. *Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009). The district court is not required to allow such an opportunity, though, if the plaintiff's claims are clearly frivolous, *Eason v. Thaler*, 14 F.3d 8, 9 (5th Cir. 1994), or if the plaintiff has pleaded his best case in the current complaint. *Mendoza-Tarango v. Flores*, 982 F.3d 395, 402 (5th Cir. 2020). James has clarified his Complaint in his sur-reply after being apprised of its deficiencies in Defendants' initial Motion to Dismiss, yet failed to correct them sufficiently to state a claim. Under these circumstances, the Court concludes that granting leave to amend would be futile and cause needless delay. Plaintiff's request for leave to amend (ECF No. 35 at 17), to the extent it is properly before the Court, is **DENIED**.

### OBJECTIONS TO THE FCR

Having considered the Motion to Dismiss and the Magistrate Judge's FCR, the Court now turns to James's Objections to the FCR.

### I. Legal Standard

"Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." FED. R. CIV. P. 72(b)(2). For timely objections, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." FED. R. CIV. P. 72(b)(3). However, for objections that are not filed within the fourteen-day period, the Court reviews the Magistrate Judge's findings and recommendations only for plain error. *Serrano v. Customs & Border Patrol, U.S. Customs & Border Prot.*, 975 F.3d 488, 502 (5th Cir. 2020).

26

When considering objections to an FCR, "[t]he district judge *may* . . . receive further evidence." Fed. R. Civ. P. 72(b)(3). While "the district court need not reject newly-proffered evidence simply because it was not presented to the magistrate judge," it can in its discretion reject such evidence. *Freeman*, 142 F.3d at 850–53 ("[T]he district court should not be compelled to ignore that the parties had a full and fair opportunity to present their best evidence to the magistrate judge."). And while the district court has discretion whether to consider new factual evidence and arguments, legal arguments not presented to the magistrate are waived. *See Shambaugh & Son, L.P. v. Steadfast Ins. Co.*, 91 F.4th 364, 369 (5th Cir. 2024) (The Fifth Circuit "considers [legal] arguments forfeited if they are not raised before a magistrate judge, even if they are subsequently raised before the reviewing district court in objections to the magistrate judge's report and recommendation.").

## II. Analysis

The Magistrate Judge filed her FCR on March 30, 2026. ECF No. 28. Plaintiff filed his Objections fourteen days later. ECF No. 30. Because Plaintiff's Objections were timely, this Court reviews de novo any part of the Magistrate's disposition "that has been *properly* objected to." FED. R. CIV. P. 72(b)(3) (emphasis added). The Court also considers Defendants' Response to Plaintiff's Objections ("Objection Response") (ECF No. 31) and the additional evidence filed at ECF Nos. 32, 33, and 37.

The Court will now consider each of James's specific objections to the FCR to the extent they are still relevant to the reasoning above. James listed thirteen "Principal Objections." ECF No. 30 at 29–30. Despite some overlap between the numbered objections, the Court will consider the Objections as presented by Plaintiff.

### A. "Treats Third-Party Statements as Plaintiff's Admissions"

Plaintiff first objects that the reasoning above relies on excerpts from a "third-party" website. ECF No. 30 at 7. The "third-party" website he describes is a website created by him—

27

or at least by his supporters—which, according to James, "presents a comprehensive account of [his] history" and "the flawed investigative process underlying his current [assault] conviction." ECF No. 3 at 5. The website uses first-person narrative from the perspective of James. *See, e.g.*, ECF No. 3-1 at 6 ("Hi my name is Edward."). And James's Complaint repeatedly refers to the website as "Plaintiff's website." *See, e.g.*, ECF No. 3 at 5, 7, 15.

James complains that the reasoning above references phrases from the website that "are nowhere in Plaintiff's pleadings." ECF No. 30 at 8. This is false. James *attached the referenced website pages to his Complaint. See* ECF No. 3-1 at 6–11. The Court can consider attachments to a complaint at the motion to dismiss stage. *See Dorsey*, 540 F.3d at 338. In fact, James included the website pages in the Complaint so the Court could do exactly what it did—compare the website to the Article and determine if the Article was true. *See* ECF No. 3 at 5 ("Defendants relied heavily on Plaintiff's website for their reporting but cherry-picked and distorted its content."). Now, after seeing where the briefing has gone, James seeks to distance himself from the website, or at least certain statements from it. But he cannot have his cake and eat it too. The Court properly considered the website excerpts that were attached to the complaint. Plaintiff's first objection is **OVERRULED**.

B. *"Applies Incorrect Legal Premise and Disregards Governing Appellate Procedure"*

Plaintiff next objects that the Court "treats affirmance [of his assault conviction] on Jan. 30, 2025 as creating an immediate obligation for Plaintiff to surrender and begin serving his sentence." ECF No. 30 at 10. It does no such thing. In fact, the Court specifically noted that, while the conviction was upheld[12] on January 30, the mandate did not issue until July 9.

---

[12] James continues to insist that an appellate court does not "uphold" a conviction until it issues a mandate to the trial court (and apparently now until the trial court issues a capias). ECF No. 30 at 11 n.8. He is wrong. But more importantly, it does not matter, for the reasons explained at length above.

Plaintiff thinks "[t]his case turns on the finality of the appeal." ECF No. 30 at 11. It does not. James admits in his complaint that he failed to check in with his bondsman as required, so his bond was revoked and Texas issued a warrant for him on February 3. ECF No. 3-1 at 9. He further admits that he was later "ordered . . . back from NJ to serve his 5-year prison sentence." ECF No. 3-1 at 10. Despite this, James admits that he surrendered in New Jersey, because he wanted to "fight" the process (including the extradition process). *See* ECF No. 28 at 9; ECF No. 3-1 at 10. This sequence of events supports the assertion that he refused to serve his sentence, regardless of whether he had reasons—even legal reasons—for doing so. And as explained above, even if the statement is not literally true, it is substantially true, because the undeniable sequence of events outlined above is not worse in the mind of the average reader than the statement that he refused to serve his sentence. Plaintiff's second objection is **OVERRULED**.

### C. "Analyzes Different Statement than Pleaded"

Plaintiff's next objection is that the FCR analyzes the statement that he "refused to return to Texas" instead of the statement that he "refused to serve his sentence." ECF No. 30 at 2, 5. To the extent Plaintiff's objection had merit, in this Order the Court expressly considered the statement that James "refused to serve his sentence." Plaintiff's third objection is **OVERRULED**.

### D. "Dismisses Broadcast Despite Pleaded Facts"

Plaintiff next objects that the FCR dismisses the broadcast claim as insufficiently pleaded. ECF No. 30 at 13–14. To the extent Plaintiff's objection had merit, in this Order the Court did not dismiss the Broadcast as insufficiently pleaded. Plaintiff's fourth objection is **OVERRULED**.

### E. "Embeds Disputed Inferences in Background"

Plaintiff next objects to the FCR's factual background section, claiming it does not

"neutrally present the pleaded record." ECF No. 30 at 14. To the extent Plaintiff's objection had merit, the factual background section above mentions the two facts Plaintiff complains of being omitted. Plaintiff's fifth objection is **OVERRULED**.

### F. "Misapplies Substantial Truth"

James next objects that the Court's reasoning "misapplies substantial-truth doctrine." ECF No. 30 at 15. His objection is not with the Court's statement of the law, but how it applies to the facts here. *Id.* ("Taking Plaintiff's pleaded chronology as true, the substantial truth differs materially from the publication's sting."). The Court explained above that the undisputed timeline supports the truth, or at least the substantial truth, of the Article and Broadcast. Plaintiff's sixth objection is **OVERRULED**.

### G. "Admits No Support for Key Assertions"

James next objects that the Court's reasoning "acknowledges that no record supports two of the publication's central assertions: that Plaintiff 'avoided many attempts by law enforcement' [sic] and that he was told to return by February 1 to begin serving his sentence." ECF No. 30 at 16. First, the record does support these assertions at least to some extent. Plaintiff refused to check in with his bondsman. ECF No. 30-1 at 9. He later removed his ankle monitor and jammed the signal. ECF No. 33-1. And he admits that he fought the extradition process back to Texas. ECF No. 3-1 at 10. But more importantly, "literal truth is *not* the applicable standard." *Walker*, 938 F.3d at 749. Even to the extent the Article's claims are not literally true, they are substantially true, as described above. Therefore, they cannot sustain a defamation claim. Plaintiff's seventh objection is **OVERRULED**.

### H. "Treats Indictment as Proof of Truth"

James next objects that the report relies on indictments to establish the truth of the underlying conduct. ECF No. 30 at 17–18. To the extent Plaintiff's objection had merit, in this Order the Court does not rely on the indictments. Plaintiff's eighth objection is

**OVERRULED**.

### I. "Resolves Competing Inferences Against Plaintiff"

James next objects that the Court characterizes his surrender to New Jersey police as being "on an outstanding warrant." ECF No. 30 at 19, ECF No. 28 at 5. But his surrender was indisputably on an outstanding warrant. ECF No. 3-1 at 13 ("I responded to the lobby of police headquarters in reference to a subject wishing to turn himself in *on an outstanding warrant*." (emphasis added)). James claims that the Court "treats that as evidence supporting the refusal narrative." ECF No. 30 at 19. It is not clear what portion of the Court's reasoning James is referring to. But he claims the reasonable inference is compliance, not evasion. *Id.* That might be true if the only warrant was the capias issued by the trial court after his surrender. But the record establishes that there was an outstanding warrant since February because James's bond was revoked. ECF No. 30-1 at 12. His surrender on that warrant in July was belated. James seems to believe that the Court has an obligation ignore objective facts when they do not help his case. *See* ECF No. 30 at 19 (claiming that calling his surrender as being on an outstanding warrant "a resolution of competing inferences against Plaintiff") It does not. Even at the motion to dismiss stage, courts do not "strain to find inferences favorable to the plaintiffs" and do not accept "unwarranted deductions." *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005). James's ninth objection is **OVERRULED**.

### J. "Reconstructs Publication"

James's next objection focuses mostly on the analysis of the statements about his personal life. First, James complains that Court fails to analyze the basis of his claim about his relationship with his former seventh-grade teacher. ECF No. 30 at 21. The objection implies that the Court ignores that the Article omits the fact that the two are married. *Id.* ("The [Court] . . . suppl[ies] the missing context and conclude[es] that it is not defamatory

31

because 'they did, indeed, marry.'"). In fact, the Court (and the FCR the objections were based on) *expressly* noted that the Article "did not state that the two eventually married." *See* ECF No. 28 at 15. Interpreting the objection charitably, James seems to be complaining that he meant to plead this as a defamation by implication claim, despite not pleading it that way in his Complaint. *See* ECF No. 3 at 12–17 (not including statements about his relationship in the "Defamation by Implication" section of the Complaint). Even assuming Plaintiff can transform the claim at this late stage, the claim fails. The Article states that "James moved to New Jersey to pursue a romantic relationship with his former 7th grade teacher," and later calls her an "older woman" and a "married woman." ECF No. 3-1 at 3. James does not deny any of this. He merely wishes the Article would have mentioned "that the relationship began between consenting adults and that they have been married for four years." ECF No. 30 at 21. The Article does not suggest that they were not consenting adults—it says she was his *former* 7th grade teacher. ECF No. 3-1 at 3. And as to the fact that they got married, "[p]ublications are not legally required to include all the facts, even if doing so would paint their subjects in a more attractive light." *See Green*, 286 F.3d at 285.

James continues by objecting to the Court's treatment of the Article's claim that James "confesses to heavy drinking throughout his time on bond." He objects that the reasoning minimizes the importance of the word "throughout," and that the "Article reinforces the impression of continuous conduct through trial and beyond." ECF No. 30 at 23. But as the Court's reasoning noted, the Article also notes that James had "good behavior on bond" and was even "leading sobriety classes." which implies to a reasonable reader that he is now sober. ECF No. 3-1 at 4. James boldly asserts "**[t]here is no such statement written in the Article.**" ECF No. 30 at 23 (emphasis in original). But there is, and by asserting to the contrary James comes dangerously close to intentionally attempting to mislead the Court. Interpreting his objection charitably, he seems to be suggesting that the language was

32

included in the Article as an excerpt from his website, and the highlighting in the Article draws attention away from the statement. ECF No. 30 at 23. Perhaps true, but that does not change the fact that the statement is in the Article. Interpreting the whole article in context, as the Court must, these statements about James's drinking were not false and were not defamatory.

James concludes this objection by arguing that the Court did not consider his claims about the Article's use of the term "fugitive" and the imagery (including the mugshots and map) under the defamation by implication standard. ECF NO. 30 at 24–25. James seems to have missed the Court's (and the FCR's) section on defamation by implication, which covers both in detail and explains why James's defamation by implication claim fails. James's tenth objection is **OVERRULED**.

### K. "Dismisses Derivative Claims as Duplicative"

Plaintiff next objects that the FCR "improperly dismisses Plaintiff's claims for intentional infliction of emotional distress and negligence by treating them as duplicative of defamation." ECF No. 30 at 25. He characterizes these claims as "aris[ing] from a broader course of conduct." *Id.* But he then lists conduct that is only related to the publication of the allegedly defamatory Article. *Id.* at 25–26 (describing the "broader course of conduct" as "including selective framing, omission of material facts, and the creation of a misleading narrative"). "The Texas Supreme Court has expressly refused to recognize causes of action that merely duplicate the remedy of defamation." *Tex. Beef Grp.*, 11 F. Supp.2d at 864, *aff'd*, 201 F.3d 680 (5th Cir. 2000). Here, despite James's protest to the contrary, his IIED and negligence claims are duplicative of his defamation claim. Plaintiff's eleventh objection is **OVERRULED**.

### L. "Fails to Determine Fault Standard"

Plaintiff next objects that the FCR "does not apply a defined fault standard." ECF No.

30 at 26. But determining a fault standard was not required, because the Article and Broadcast were true, or at least substantially true. "The truth of a statement is an absolute defense to a claim for defamation." *Klentzman v. Brady*, 312 S.W.3d 886, 898 (Tex. App.— Houston [1st Dist.] 2009). Because James cannot establish that the article and broadcast are untrue under the relevant legal standard, he has failed to state a claim, regardless of the applicable fault standard. Plaintiff's twelfth objection is **OVERRULED**.

*M. "Finds Amendment Futile on Wrong Premise"*

Plaintiff's final objection is that the Court "concludes that amendment would be futile." ECF No. 30 at 27. He argues that his Complaint does a state a claim. *Id.* And that even if it does not, he can "amend to further clarify the distinctions already pleaded." *Id.* According to Plaintiff's own objection, there is nothing he could add to his complaint that would transform it into one that states a claim. The undisputed record establishes that the Article and Broadcast are true or substantially true. No change in pleading can change that. Plaintiff's thirteenth objection is **OVERRULED**.

### CONCLUSION

For the foregoing reasons, the Court **OVERRULES** Plaintiff's Objections. Defendants' Motion to Dismiss (ECF No. 16) is **GRANTED**. Plaintiff's Motion for Reconsideration (ECF No. 10) is **DENIED** as moot. This case is **DISMISSED with prejudice**.

**SO ORDERED.**

May 28, 2026

_____
MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE

34